UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:12-cv-00840-FDW-DSC

| AARON KEVIN DANIELSON, | ) |
|---|---|
| Plaintiff, | ) |
| vs. | ) |
|  | ) ORDER |
| JAN PETRUS HUMAN & | ) |
| ALBERTUS JOHANNES HUMAN, | ) |
|  | ) |
| JOHN DOES 1-100, | ) |
|  | ) |
| Defendants. | ) |

**THIS MATTER** is before the Court on Plaintiff Aaron Kevin Danielson's ("Plaintiff") Second Motion for Default Judgment (Doc. No. 19). Plaintiff Danielson seeks relief for losses sustained as a result of a joint business venture between him and Defendants Jan Petrus Human and Albertus Johannes Human (collectively "Defendants"). Defendants have not responded to Plaintiff's Complaint, (Doc. No. 1), and the time for doing so has expired. Having considered Plaintiff's Motion, Memorandum (Doc. No. 19-2), and Affidavits in Support (Docs. Nos. 19-4, 19-34), the Court GRANTS Plaintiff's Motion in part and DENIES in part.

**Factual Background[1]**

Plaintiff met Defendants Jan Petrus Human and Albertus Johannes Human, residents of South Africa and brothers, in 2006. (Doc. No. 1, ¶ 32). Defendants presented Plaintiff with a

---

[1] The Court recites the facts as alleged, (Doc. No. 1), and notes that the Complaint is construed liberally because of Plaintiff's Pro se status. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed" and "a *pro se* complaint…must be held to less stringent standards than formal pleadings drafted by lawyers.").

"highly profitable [joint] business venture" involving the commercialization of a hybrid battery technology. (Doc. No 1, ¶¶ 33-35). In exchange for an eight hundred thousand (800,000) dollar investment and five hundred thousand (500,000) dollar line of credit, Defendants offered Plaintiff (1) an ownership interest in three companies, Boerinbase, Inc., Energy X, Inc. and US Energy X, Inc., (2) the position of Managing Director in US Energy X, Inc., (3) and exclusive licensing rights to the hybrid battery technology. (Doc. No. 1, ¶¶ 35, 45; Docs. Nos. 1-4, 1-23, 1-24).

Plaintiff accepted the offer June 28, 2007, and assumed his role as Managing Director of U.S. Energy X, Inc. (Doc. No. 1, ¶¶ 35-36). Plaintiff "worked assiduously and quickly to jumpstart operations" spending one hundred eighty-four thousand five hundred and ninety-five dollars and fifty-one cents (184,595.51) on employee hiring, company domain registrations, trademark applications and other business start-up expenses. (Doc. No. 1, ¶¶ 36-37, Doc. No. 34-19). During this time, Defendants relayed development updates to Plaintiff via email and telephone. (Doc. No. 1, ¶¶ 36-37, 64-65, 67-69, 87-88; Docs. Nos. 1-5, 1-19). Along with the development updates, Defendants requested Plaintiff finance tests on "automotive hybrid car batteries" and the construction of "solar applications." (Doc. No. 1, ¶¶ 67-69, 142; Docs. Nos. 1-5, 1-16, 1-19, 1-20, 1-21, 1-22). Relying on Defendants' representations and assurances that "very advanced negotiations" existed with "numerous interested parties," Plaintiff wired six hundred and seventy-five thousand dollars (675,000) dollars to Defendants' South African Company Bank Account in four separate installments between June 29, 2007, and December 18, 2007.[2] (Doc. No. 1, ¶¶ 54, 67-69, 89-90; Docs. Nos. 1-10, 1-11, 1-13, 1-14). Plaintiff later moved his family to the United

---

[2] Plaintiff submitted bank receipts to the Court totaling six hundred and seventy-five thousand (675,000) dollars that was transferred to Defendants; however Plaintiff failed to submit any receipts for the remaining one hundred and twenty-five thousand (125,000) dollars he claims. (Doc. No 1, ¶ 35).

States in March of 2008 to continue commercialization of the hybrid technology. (Doc. No. 1, ¶¶ 35-36, 136).

By June of 2008, Plaintiff's frequent requests for testing documentation and hybrid battery prototypes remained unfulfilled, which brought commercialization to a halt, and sparked disagreement that led to settlement negotiations. (Doc. No. 1, ¶¶ 146-48, Docs. Nos. 1-26, 1-28, 1-29-42). After a year of negotiations, Defendants stopped responding. (Doc. No. 1, ¶¶ 148-70). Plaintiff hired an "international legal consultant" to locate Defendants and determine ownership of the hybrid technology. (Doc. No. 1, ¶ 170). On or about October 13, 2011, Plaintiff learned that Defendants were actively seeking out other investors in both Nevada and North Carolina to whom they had also promised exclusive licensing rights to the technology. (Doc. No. 1, ¶¶ 6-7, 170-71). Upon further investigation, Plaintiff discovered Defendants' ownership of several companies purporting to hold licensing rights including three Defendants, H-Power Worldwide, LLC, H-Power Energy Storage Technologies, Inc., and H-Power Americas, Inc. (collectively "NC Corporate Defendants"). (Doc. No. 1, ¶ 7, Docs. Nos. 1-2, 1-3, 1-44, 1-55, 1-56).

Based on this information, Plaintiff, appearing Pro se, filed a 63-page Complaint (Doc. No. 1) against Defendants J. Human, A. Human, the NC Corporate Defendants, and John Does 1-100, seeking retention of exclusive licensing rights within the United States of Defendants J. Human and A. Human's patented hybrid battery technology, one million (1,000,000) dollars in compensatory damages, treble damages, lost profits, reasonable attorney's fees and expenses, court costs, issuance of "appropriate orders" to restrain Defendants, and imprisonment of Defendants for no less than 30 years. (Doc. No. 1, ¶¶ 270-84).

Plaintiff asserts federal causes of action for Civil RICO; and state law causes of action for Fraud, Constructive Fraud, Breach of Fiduciary Duty, Breach of Contract, Conversion, and Unfair

& Deceptive Trade Practices. (Doc. No. 1). A myriad of federal criminal charges were also alleged including Mail Fraud, Wire Fraud, Extortion, Laundering of Monetary Instruments, Transportation of Stolen Goods, Securities & Monies, and Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity. (Doc. No. 1).

Plaintiff initially filed his Complaint December 17, 2012. (Doc. No. 1). The three NC Corporate Defendants waived service, (Doc. No. 5), and filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 26). The Court dismissed this action as to the three NC Corporate Defendants February 26, 2014, (Doc. No. 30), leaving only Defendants A. Human, J. Human, and John Does 1-100. Defendants John Does 1-100 have yet to be identified and served in this action.

Plaintiff filed his First Motion for Default Judgment against Defendants A. Human and J. Human October 4, 2013. (Doc. No. 15). The Court struck Plaintiff's First Motion because Plaintiff failed to file for an Entry of Default. (Doc. No. 16). Now, Defendant's time to respond has long run, and on December 10, 2013, Plaintiff filed a Motion for Entry of Default and a Second Motion for Default Judgment. (Docs. Nos. 18, 19). The Clerk of Court Entered the Default March 18, 2014. (Docs. Nos. 31, 32).

**Service of Process**

Plaintiff must effectuate service to obtain an entry of default or default judgment. See FED. R. CIV. P. 55(a) (requiring entry of default when a defendant has "failed to plead or otherwise defend as provided by these rules). Federal Rule of Civil Procedure 4(f) provides that an individual may be served in a foreign country by "a method that is reasonably calculated to give notice" proscribed by that country's law or, unless prohibited by that country, personal service, service by mail or as the court orders. FED. R. CIV. P. R. 4(f)(2-3).

While service is not invalidated by technical deficiencies where a Plaintiff can show actual notice, ignoring the plain requirements for service implicates strict compliance. Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc., 733 F.2d 1087, 1089 (4th Cir. 1984) ("When the process gives the defendant actual notice of the pendency of the action, the rules, in general, are entitled to a liberal construction."); see also Maid to Perfection Global, Inc. v. Ensor, No. RDB-09-cv-0958, 2010 WL 1254194, at *3 (D. Md. Mar. 29, 2010) (citing Armco and declining to invalidate process where Defendant's counsel contacted Plaintiff indicating actual notice of the pending suit). The Court keeps in mind due process requirements when applying a liberal construction noting proper service is "notice reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).

Plaintiff made several attempts at service that suffer from technical deficiencies: (1) personal service to J. Human at his residence in Sommerset West, South Africa accepted by his wife but lacking an affidavit from the individual whom effected service; (2) personal service of J. Human and A. Human's attorney, Mr. Andre P. de la Rey in Tygervalley Bellville, South Africa also lacking an affidavit from the individual whom effected service; (3) service by mail to Defendants residence without a signed return receipt; and (4) service by mail to Attorney de la Rey without a signed return receipt. (Doc. No. 6 ¶¶ 5-10). See FED. R. CIV. P. R. 4(l)(1), (f)(2)(ii) (requiring individual who served defendant personally to attest to act and for defendant's signed acceptance acknowledging receipt for service by mail). While the service attempts are each lacking, the facts of the case clearly indicate Defendants are well aware of the suit. After the attempts were made, Plaintiff received a letter from Defendant's attorney, Mr. de la Rey, acknowledging his receipt of the summons and complaint. The letter reads, "I refer to the above

5

matter and in particular the summons delivered to my office recently. Both Bert and Jan intend opposing [sic] your action on a number of grounds and you will shortly be furnished with their papers in reply." (Doc. No. 6-5). Like Maid where the Court refused to invalidate process because Defense counsel contacted Plaintiff indicating actual notice, the Defendants' attorney contacted Plaintiff in regards to the above-captioned dispute. Maid, No. RDB-09-cv-0958, 2010 WL 1254194, at *3. Even further, Defendants' attorney made clear an intent to "oppos[e the] action on a number of grounds." (Doc. No. 6-5). Based on Fourth Circuit precedent, Plaintiff's Pro se status, the multiple attempts at service and Defendants' actual notice of the suit, the Court accepts Plaintiff's personal service of Defendant's attorney and personal service of Defendant J. Human's wife at his residence as adequate proof of service.[3]

**Legal Standard**

The award of default judgment is governed by Rule 55(a) of the Federal Rules of Civil Procedure, which provides in relevant part that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Upon entry of default, a defaulted party is deemed to have admitted all well-pleaded allegations of fact contained in the complaint. Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001); Weft, Inc. v. GC Inv. Assocs., 630 F. Supp. 1138, 1141 (E.D.N.C. 1986) (citations omitted); see also Fed. R. Civ. P. 8(b)(6) ("An allegation-other than one relating to the amount of damages-is admitted if a responsive pleading is required and the allegation is not denied."). However, the defendant is not

---

[3] It is important to note that the Defendants currently reside in South Africa. (Doc. No. 1). Consequently, a South African Court of Law must agree to enforce any final judgment of this Court. No international treaties exist that bind a South African Court to this Court's Judgment and while South African Law does not prohibit personal service, it does require service be effectuated by a Sheriff. Uniform Rules of Court: Rules Regulating the Conduct of the Proceedings of the Several Provincial and Local Divisions of the High Court of South Africa, June 2007, R. 4 (JUTA).

deemed to have admitted conclusions of law, and the entry of "default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." Ryan, 253 F.3d at 780 (citations omitted); see also E.E.O.C. v. Carter Behavior Health Servs., Inc., No. 4:09-cv-122-F, 2011 WL 5325485, at *3 (E.D.N.C. Oct. 7, 2011). Rather, in determining whether to enter judgment on the default, the court must determine whether the well-pleaded allegations in the complaint support the relief sought. See Ryan, 253 F.3d at 780 (citing Weft, 630 F. Supp. At 1141); DIRECTV, Inc v. Pernites, 200 F'App'x 257, 258 (4th Cir. 2006) (a " 'defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law' ") (quoting Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)); Arista Records, LLC v. Gaines, 635 F. Supp. 2d 414, 416 (E.D.N.C. 2009); 10A Wright, Miller & Kane, Federal Practice and Procedure § 2688 (3d ed. Supp. 2010) ("[L]iability is not deemed established simply because of the default . . . and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

To that end, the Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." Colleton Preparatory Acad.. Inc. v. Hoover Univ., Inc., 616 F.3d 413, 417 (4th Cir. 2010) (citations omitted). Nonetheless, default judgment "may be appropriate when the adversary process has been halted because of an essentially unresponsive party." SEC v. Lawbaugh, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

If the court finds that liability is established, it must then determine damages. Carter Behavior Health, 2011 WL 5325485, at *4 (citing Ryan, 253 F.3d at 780-81; Gaines, 635 F. sup. 2d at 416-17). The court must make an independent determination regarding damages and cannot accept as true factual allegations of damages. Id. (citing Lawbaugh, 359 F. Supp. 2d at 422).

7

While the court may conduct an evidentiary hearing to determine damages, it is not required to do so, but may rely instead on affidavits or documentary evidence in the record to determine the appropriate sum. See E.E.O.C. v. North Am. Land Corp., No. 1:08-cv-501, 2010 WL 2723827, at *2 (W.D.N.C. July 8, 2010).

**Discussion**

Initially, the Court addresses the criminal allegations because of Plaintiff's Pro se status. This matter is a civil action, and neither the Court nor the Plaintiff have the power to pursue federal criminal charges against Defendants. The United States, represented by the United States Attorney, must prosecute any and all federal criminal offenses within their designated districts. See 28 U.S.C. § 547. The Court simply does not have the power to charge and prosecute individuals *sua sponte*. Consequently, Plaintiff's Motion for Default Judgment as to the criminal allegations, claims 5, 6, and 8-12, is DENIED.

Plaintiff's Complaint alleges Defendants operated a long term, organized scheme that attracted investors by offering exclusive licensing rights in newly-developed technology and ownership interest in legitimately created companies. When the investor realizes he's been 'duped' and the joint venture is merely a façade, Defendants clear bank accounts, disappear and begin the scheme again in another state. Because Defendants failed to respond to Plaintiff's claims, and the Complaint alleges facts consistent with violations of Civil RICO, the facts alleged are deemed admitted. Ryan, 253 F.3d at 780. Accordingly, the Court GRANTS Plaintiff's Second Motion for Default Judgment in part and finds Defendants violated 18 U.S.C. § 1962(a), (b), (c), and (d). Plaintiff is entitled to an award of damages as a result.

**Civil RICO Remedies**

Plaintiff seeks one million dollars in damages trebled to three million dollars, costs and attorney's fees pursuant to 18 U.S.C. § 1964(c). (Doc. No. 1, ¶ 271). Damages for violations of Civil RICO include treble damages, costs, and attorney's fees. 18 U.S.C. § 1964(c); H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 233 (1989). Punitive damages are not available because "statutory damages under RICO already contain a punitive component in the form of the trebling provision." Southstar Funding, LLC v. Sprouse, No. 3:05-cv-253, 2007 WL 812174, at *4 (W.D.N.C. Mar. 13, 2007).

After reviewing all evidence submitted, the Court awards Plaintiff eight hundred fifty-nine thousand five hundred ninety-five dollars and fifty-one cents (859,595.51) trebled to two million five hundred seventy-eight thousand seven hundred and eighty-six dollars and fifty-three cents (2,578,786.53). The base amount accounts for the four wire transfers Plaintiff made to Defendants totaling six hundred and seventy-five thousand (675,000) dollars and Plaintiff's business costs totaling one hundred and eighty-four thousand five hundred ninety-five dollars and fifty-one cents (184,595.51).

Because treble damages are designed to fully compensate a plaintiff for intangible injuries where actual damages are often speculative or difficult to prove, the Court declines to assess damages for the exclusive patent rights promised to Plaintiff. Id. Even Plaintiff admits that the remaining damages he seeks are "highly speculative" and that there are "no documents to quantify" their worth. (Doc. No. 34, ¶ 8). The Court also declines to award pre-judgment interest because of the treble damages award. Like treble damages and punitive damages, pre-judgment interest functions as a remedial sanction, and the statutory damages multiplier in this

case already serves the corrective purpose.  See Southstar Funding, LLC, No. 3:05-cv-253, 2007 WL 812174, at *4.

Plaintiff is not entitled to attorney's fees because Plaintiff is Pro se.  Kay v. Ehrler and Kentucky Bd. Of Elections, 111 S.Ct. 1435 (1991) (agreeing pro se litigants are not entitled to attorneys fees).  Without an attorney of record, the Court cannot properly evaluate whether the fee amount requested is reasonable.  Southstar Funding, LLC, No. 3:05-cv-253, 2007 WL 812174 at *7 (considering number of attorneys present in courtroom, strength of arguments briefed, complexity of issues and redundancy of work to determine reasonableness of fees).  Accordingly, the Court DENIES Plaintiff's request for attorney's fees.  However, the Court awards costs to Plaintiff in the amount of four hundred ninety-two dollars and fourteen cents (492.14).

**State Claim Remedies**

As discussed above, Plaintiff also seeks remedies for violations of State Law stemming from the same facts that form the basis of Plaintiff's Civil RICO claim.[4]  While the Plaintiff properly pursued alternative theories for relief based on the same facts, a party is prohibited from duplicative recovery for the same damages.  E.E.O.C. v. Waffle House, Inc., 122 S.Ct. 754, 766 (2002); Gust K. Newberg Const. Co. v. Loven, 1993 U.S. Dist. LEXIS 3456, 1993 WL 46828, at *2 (4th Cir. Feb. 23, 1993) (unpublished) (re-emphasizing prohibition against duplicitous recovery) (internal citations omitted).  Whether considered in terms of alternate relief based on the same facts or multiple recovery for the same damages, the damages recoverable pursuant to the Civil RICO claims are inclusive of those recoverable under the state claims.  See Moreley v.

---

[4] Plaintiff also asserts a cause of action for "Constructive Trust."  The Court fails to find any cause of action in North Carolina law for constructive trust, but instead liberally construes the claim as a request for relief under state law in the form of a Constructive trust.

10

Cohen, 888 F.2d 1006, 1009 (4th Cir. 1989) (affirming trial court finding that related state claim damages were encompassed within Civil RICO treble recovery). Consequently, Plaintiff is only entitled to the trebling of his Civil RICO award and the Court need not discuss the state law claims.

**Conclusion**

Plaintiff's Second Motion for Default Judgment is GRANTED in part and DENIED in part. (Doc. No. 19). Because Defendants failed to respond to Plaintiff's claims, the facts alleged are deemed admitted. Accordingly, Plaintiff shall be permitted to recover two million five hundred seventy-eight thousand seven hundred eighty-six dollars and fifty-one cents (2,578,786.51) in Civil RICO treble damages and four hundred ninety-two dollars and fourteen cents (492.14) in costs for a total judgment of two million five hundred seventy-nine thousand two hundred seventy-eight dollars and sixty-five cents (2,579,278.65).[5] The Clerk is respectfully DIRECTED to ENTER JUDGMENT and CLOSE THE CASE.

IT IS SO ORDERED.

Signed: May 2, 2014

Frank D. Whitney
Chief United States District Judge

---

[5] Because of Plaintiff's Pro se status, the Court again notes that Defendants reside in South Africa and the final judgment above is worth nothing more than the paper it is printed upon unless enforced by a South African Court.